Reed, P. J.,
dissenting.
I regret that I am compelled to dissent from the majority opinion in this case. A proper regard for the views of my learned associates requires me to state the grounds of such dissent.
I. I cannot adopt the construction of the statute as construed by my learned associates, nor the reasoning by which the conclusion is reached that the affidavit for the attachment was a nullity and the affidavit void. He says: “ There must, before the writ can issue, be an affidavit filed, and it must set forth an indebtedness, so as to bring the plaintiff within the class of persons in whose favor an attachment is allowed.” It is not contended that the affidavit was not sufficiently full in this respect. Cursory examination will show that it was. He continues: “It must also allege the existence of some *324 condition which the statute makes a ground for attachment, in order to show the right of the plaintiff to resort to this remedy for the collection of his debt.” This, in different language, is but a reiteration of the requirements specified in section 92 of the statute. If the requirements of that section were complied with, there would be no use for section 117. He continues: “ These statements may he imperfect. They may not he, sufficiently full, or they may he ambiguous or obscure. Nevertheless, if the affidavit contains them, it is sufficient to invest the court with jurisdiction.” Certainly, if the allegations in the affidavit “ were imperfect and not sufficiently full,” that would be a substantial defect, a defect in substance which it is admitted could be amended; but how could such amendment be made, if, as reasoned by the learned judge, by want of such statutory substance the court could acquire no jurisdiction ? “ Or they may be ambiguous or obscure,” and an amendment will be allowed. The latter clause must be separated from the former, which was a defect in substance, while the latter is only of form, which would be amendable without section 117. If the affidavit can be amended in both form and substance, that is all that I claim. I take it that section 117 means what it says: “ No writ of attachment shall be quashed on account of any informality or insufficiency of the original affidavit,” etc.; providing for both formal and substantial amendments. An insufficiency must, unquestionably, be some lack of a substantial statutory requirement. Yet it is urged that any such lack voids the writ and the court had no jurisdiction. The reasoning and conclusion reached in the opinion, as I view them, abrogate section 117, and leave the plaintiff to strict compliance rvith section 92, .or the quashing of his writ for want of jurisdiction.
I have carefully examined the learned opinion to ascertain from it' what, in the opinion of my associates, the affidavit lacked, but failed to find it. The affidavit states the indebtedness, the amount, that it is overdue and unpaid. The statute at that time made an overdue promissory note gi’ound *325 for attachment, the only allegation lacking was that it was evidenced by a promissory note, and being the fact it was in no respect jurisdictional and might have been added at any time on motion, they, certainly, could be covered by the word “ insufficiency ” in the statute. Hence, I conclude, that the proceeding was not void, but at most voidable, on motion of the defendants.
II. It is said in the opinion that the sole question for determination was the validity and consequent priority of' the Mentzer attachment. As the controversy in this case is entirely in regard to the goods attached, and the record disclosed the fact that, by personal service of summons, the proceeding was in personam as well as in rem, and the attachment only auxiliary, this not being an attachment against a nonresident, I fail to see tiie relevancy and importance of the discussion in regard to proceedings in rem and in personam. It is said: “ The jurisdiction of the court in attachment proceedings depends upon the affidavit, and if none is filed the attachment writ and all proceedings under it are void; ” and several authorities from other states are cited in support of the proposition. The fact is shown by the record that by personal service of writ of attachment and summons, the proceeding was both in rem and in personam, and the attachment, as in all cases of that character, was only auxiliary. I can find ndthing in the cases cited making them applicable to the question in controversy.
As proceeding by attachment is purely statutory, it would have been far more satisfactory had some authority been found construing our statute or a similar one, and holding the affidavit in this case void and equivalent to none at all, but none such are presented. It is said the affidavit must combine the allegation of indebtedness with the allegation of cause,” and several authorities are cited in support. Test the affidavit by this, we find the indebtedness stated definitely, and the cause, “ overdue and unpaid,” which was sufficient under the statute. Here are both debt and cause stated. That the indebtedness was evidenced by a promissory note *326 was not stated. In the entire discussion I can find no authority cited or referred to sustaining the position of the court, while section 117 explicitly declares that no writ shall be quashed “ on account of any informality or insufficiency of the original affidavit.”
III. Proceeding, the opinion say»: “ We have been referred to some cases, decided by the supreme court of California, in which it was held that proceedings in attachment could not be collaterally questioned where by proper amendment, while in progress, they might have been made regular. We have examined these cases and find no disharmony between them and the general current of authority. We find in them the same distinction as elsewhere between proceedings which are voidable merely, and those which are absolutely void,” etc. It will be seen that the whole decision is based upon the assumption that the proceeding was absolutely void. Our statute was bodily imported from California. Its construction by the courts of that state are authoritative, if not conclusive. I fear, from the hasty generalization above given, that the examination of those decisions was too cursory, and that they cannot be so easily disposed of. It appeal’s to be the well settled law of that state that the sufficiency of the affidavit and the regularity of the attachment proceedings cannot be questioned and raised collaterally by one not a party to the proceeding.
Porter v. Pico, 55 Cal. 165, the court held: “ This lien was not affected by any irregularities in the attachment itself, nor was it destroyed by the judgment rendered in the attachment suit. Any irregularities in obtaining it were waived by the defendant to the suit when he appeared and answered, without taking advantage of them by motion or otherwise, in the course of the proceedings. The procéss is merely auxiliary, and the judgment in the action cures all irregularities.”
In Scrivener v. Dietz, 68 Cal. 1, an almost identical question in regard to the irregularity of the affidavit was presented. The court said: “ Notwithstanding the infirmity, the attach *327 ment was not void. It was only voidable at the instance of the attachment defendant, and could not be assailed collaterally by a stranger.” And see, also, Moresi v. Swift, 15 Nev. 215, where the same statute was construed.
In the opinion, Dixey v. Pollock, 8 Cal. 570, and Mudge v. Stienhart, 78 Cal. 34, are cited; and, in regard to the first, it is said that the lien of the first attaching creditor was adjudged of no effect as against that of a subsequent attaching creditor, on the ground that the first attachment was invalid for jurisdictional reasons. The citation and statement are liable to mislead, unless the case is examined. The learned judge who wrote the opinion seems mistaken. There were three attachments against the same defendant, in all of which plaintiffs had recovered judgment, — first, Adams v. Pollock; second, Pollock v. Pollock ; third, Dixey v. Pollock. In the first there was an irregularity in the papers. In the lower court it was held fatal, and judgment awarded to Pollock, plaintiff. Dixey, the third, appealed, and the supreme court held that the irregularity in the first papers (Adams Case) was not fatal, reversed the judgment in favor of Pollock, the second, and gave it to Adams, the first attaching creditor, using the following significant language: “ When the contest is between creditors, all the equities are in favor of the most diligent. The subsequent execution or attachment creditor can claim no equitable relief. * * * And it is well settled that a stranger cannot interfere upon the ground of irregularity.” A case more fatal to, and at variance with, the conclusions reached, can hardly be found.
An examination of the case of Mudge v. Stienhart, 78 Cal. 34, cited, will show nothing in line or in common with the questions here presented. The defendant was nonresident; the proceeding purely in rem ; was in an action of tort. The court held: First, that attachment was purely statutory, and could have no force except in the cases provided by the statute ; second, “ the existence of a contract, express or implied, is an essential basis, without which no writ of attachment can properly issue, and as in this case the action was foimded *328 not upon contract, but upon the fraud and wrongful acts of the defendant,” it was held void. Its want of applicability to the questions in this cáse is at once apparent. In support of my positions here taken, I will also respectfully call attention to Cooper v. Reynolds, 10 Wall. (U. S.) 319; Pennoyer v. Neff, 95 U. S. 714; Carothers v. Click, 1 Morr. (Iowa), 54; Drum v. Crocker, 22 Ind. 324, where it is said : “ Objections to the regularity of attachment proceedings cannot be first raised in collateral suits.” See, also, Drake on Att., sec. 273; McComb v. Reed, 28 Cal. 285; Morgan v. Avery, 7 Barb. (N. Y.) 657; Newton v. The Bank, 14 Ark. 9; Morse v. Smith, 47 N. H. 477 ; Sterling v. Levy, 1 Daly (N. Y.), 95.
It is said in the opinion, “ The two sections [92 and 117] must be construed together, and in harmony with each other, as parts of the same act.” I can see nothing incompatible in the two sections that needs construction or requires the affidavit to be held void in order to harmonize the sections. Section 92 is a general statute, and sets forth what the affidavit shall contain in order to render the attachment effective against the chattels of the defendant. If the requirements are not complied with, defendant may move to quash. Then the special statute, section 117, declares that the proceedings shall not be quashed by reason of irregularity and insufficiency, if plaintiff shall amend and reform the affidavit, and the authorities are conclusive that the matter is confined entirely to the parties. If the defendant overlooks or disregards the defects, he waives them, and can legally do so, as in case of any other waiver, and the judgment cannot be attacked by outsiders.
IV. There was a fatal defect in proof, as well as in the complaint, — no allegation that the attachment of appellees was valid, that it was ever levied upon the goods in controversy or upon anything else, nor is there any such fact stipulated. The record shows that appellees made no proof nor offered any evidence whatever of any attachment proceedings, nor any judgment. The whole thing rests upon the *329 allegation “ * * * and caused to be issued a writ of attachment, which writ of attachment was directed to the sheriff of Arapahoe county, whereby the said sheriff was to attach the rights, credits, monies and effects, goods and chattels of the said L. Filberg wherever they might be found.” Absolutely nothing, either in complaint or evidence, to show any levy upon or legal claim to the goods in controversy. How could the court assume that the attachment proceedings were regular, and that the judgment was regular, and decree, without exhibits or evidence, a valid judgment, by attachment of appellees, and that the “subsequent and junior attachments of plaintiff * * * shall have' precedence over the defendant O. F. Mentzer’s attachment and proceedings thereunder?” The court was compelled to assume that appellees’ attachment and judgment were valid, that it was levied upon the goods in controversy, and that there was not other and different property out of which the money could be made. My learned associates assume the same facts, adopt them, and affirm the decree. I cannot so do. The complaint was fatally defective, and conferred no jurisdiction, and there was absolutely no proof on which the decree could be based.
V. The question of the jurisdiction of the court of equity to declare a judgment at law void, and substitute and give precedence and priority to another supposed judgment alleged to exist, has not, in my opinion, received that careful attention that its importance requires. It briefly says: “ Counsel have not advised us of any legal remedy at the plaintiffs’ command, and none occurs to us. The attachment defendant hastened to confess judgment long before she was required to appear, leaving the plaintiffs no time to intervene in that action, even supposing that intervention by them would have been proper. We think the facts bring the case within the jurisdiction of a court of equity, and that the plaintiffs have not mistaken their remedy.” What facts are referred to as bringing the case within the jurisdiction of a court of equity ? Certainly not the haste of the defendant *330 in recognizing the validity of the attachment and confessin judgment before the return day. Under our statutes, an numerous decisions, defendant could legally prefer one creditor and exclude others. It is done on a large scale every month, — the entire stock and business transferred to a creditor, — and the first intimation to the other creditors is a change of sign and the declaration of ownership. Yet it cannot be claimed, unless fraud is established, that such disposition of the entire stock confers jurisdiction on a court of equity. The defendant might, in the first instance, have made a full bill of sale or confessed judgment, and a court of equity would 'have been powerless to’ review or declare the transaction void in the absence of fraud, — much less decree the priority of another creditor. & crq
The entry of a judgment at law and the issuing of an execution, and the declaring it void and substituting another, were in the same court, by different judges, and affords a curious commentary on the administration of the law; and the fact, as stated in the opinion, that appellees had no legal remedy, would not confer jurisdiction upon a court of equity. It is far from the fact that a court of equity has jurisdiction because the plaintiff may allege that he has no remedy at law. There are numerous cases like the present, where parties have no rights that can be enforced in either equity or at law.
In reviewing actions at law, the court of chancery is confined in very narrow limits. The law is clearly and’concisely stated in 2 Story’s Eq. Jur., secs. 1570 to 1575, and is so at’ variance with the views of my associates, I cannot refrain from quoting from section 1573: “ In matters where the jurisdiction of the courts of law and equity is entirely concurrent, the adjudication of the court of law is conclusive upon courts of equity. And a court of equity will not interfere to relieve a party from such adjudication except upon the ground of newly discovered matter since the trial; of fraud in obtaining the judgment; or of some inevitable accident or mistake.” Section 1575: “It seems tobe conclu *331 sively settled that a judgment can only be impeached in a court of equity for fraud in its concoction. It is said, ‘ there is no case in which equity has ever undertaken to question a judgment for irregularity.’ ” See Emmerson v. Udall, 13 Vt. 477; Pettes v. Bank of Whithall, 17 Vt. 435; Carrington v. Hollabird, 17 Conn. 530; Shottenkirk v. Wheeler, 3 Johns. Ch. 275; Baker v. Morgan, 2 Dow (H. of L. Cas.), 526 ; Elliott v. Balcom, 11 Gray, 286; Boles v. Johnston, 23 Cal. 226.
In Drake on Att., sec. 262, it is said that for irregularities in the proceedings, “ other attaching creditors cannot make themselves parties to the proceedings for the purpose of defeating them on that account. Nor will a bill in equity lie in favor of a junior attacher to set aside a senior attachment on the ground of insufficiency of the affidavit on which it was issued; ” citing numerous authorities. And see Fridenberg v. Pierson, 18 Cal. 152; Dixey v. Pollock, 8 Cal. 570; McPherson v. Snowden, 19 Md. 197; Buckley v. Lowry, 2 Mich. 418; Curtis v. Stewert, 36 N. J. L. 304; Thompson v. Meek, 3 Sneed, 271; Danaher v. Prentiss, 22 Wis. 311; Nelson v. Turner, 2 Md. Ch. 73.
The only allegations in the complaint that could confer jurisdiction on a court of equity were that the suit of Mentzer against Filberg “ was commenced unjustly and without foundation,” and that no indebtedness existed, and that, “ for the purpose of defrauding her creditors and the plaintiff,” etc., she colluded with plaintiff and others, and confessed judgment, etc. These charges were abandoned and no proof offered in support of them, and the court below found the debt valid. After such finding the court was, under the authorities, divested of jurisdiction for any purpose whatever, — powerless to afford injunctive relief, which was the only relief it could have granted, had the charges of fraud and collusion been sustained. I have been unable to find a case where a court of equity with concurrent jurisdiction assumed the right to review and retry a case, and set aside a judgment at law, where either fraud, collusion, accident *332 or mistake was not alleged and established. In this case the court below, without proof of any character whatever, had to assume that the second attachment was regular, and this court is required to indulge the same presumption, and to hold^rsf, that the alleged attachment was regular, and without even an allegation or proof that any judgment had been obtained, or any proof whatever of any indebtedness from Filberg to appellees, and to hold the judgment of Mentzer void, and the goods liable on the second, on the bare allegation that Filberg was indebted and they “ had caused to be issued a writ of attachment, which was directed to the sheriff of Arapahoe county,” with no allegation or proof that the writ had ever been served. I cannot indulge in such presumption in a case even in equity.
Leaving out all the legal questions above discussed, on the pleadings, and with no proof, the court was without jurisdiction- or power to recognize the claim of appellees, — much less subrogate a prior judgment to it.